IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL HART, as personal representative
of the Estate of Cody Serda,

    Plaintiff,

vs.                                                                                               No. CV 19-529 KG/JFR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Cody Serda died in an automobile collision while riding his motorcycle on October 11, 2017. (Doc. 1-1) at 2. Cody was a beneficiary to five State Farm Mutual Automobile Insurance Company (State Farm) insurance policies executed by his grandfather, Patrick Serda. *Id.* In pertinent part, Cody's Estate (the Estate) claims State Farm "failed to obtain a proper rejection of uninsured and underinsured motorist coverage" as required under New Mexico state law. *Id.* Thus, the Estate argues that State Farm must reform its uninsured and underinsured motorist (UM) coverage to award the maximum amount permitted by law. *Id.* The Estate commenced this lawsuit in the Second Judicial District Court of Bernalillo County, requesting a declaratory judgment against State Farm and damages for breach of contract. *Id.* at 2-4. State Farm timely removed the case to this Court. (Doc. 1) at 1-4.

Presently before the Court are State Farm's Motion for Summary Judgment (Motion) (Doc. 24) and the Estate's Cross-Motion for Summary Judgment on Declaratory Action (Cross-Motion) (Doc. 28). Both Motions are now fully and timely briefed. *See* (Docs. 27, 32, Responses, and Docs. 33, 34, Replies). The Court notes jurisdiction under 28 U.S.C. § 1332.

Having considered the parties' briefing, the record, and the relevant law, the Court grants in part and denies in part State Farm's Motion for Summary Judgment (Doc. 24) and grants in part and denies in part the Estate's Cross-Motion for Summary Judgment (Doc. 28).

I.      *Summary of Undisputed Material Facts*

The parties do not dispute the material facts of this case. At Cody's death, the Serdas had five automobile insurance policies covering the family's five vehicles. (Doc. 28) at ¶¶ 1, 2, 8. Each of the Serdas' insurance policies carried liability coverage of $100,000 per person and $300,000 per incident. *Id.* at ¶ 9. The insurance policies also included UM coverage for $25,000 per person and $50,000 per incident. *Id.* at ¶ 10. The policies were subject to "stacking," entitling the Serdas to combine the total coverage for each policy when filing a claim. *Id.* at ¶ 23; (Doc. 32) at 3.

The Serdas could have purchased UM coverage in an amount equal to their liability limits—$100,000 per person and $300,000 per incident—for each of their five policies. (Doc. 28) at ¶¶ 24-25. Because the Serdas opted to purchase less UM coverage than they were entitled, New Mexico law required that they sign a "rejection" notice, evidencing their informed consent to waive full coverage. *See* (Doc. 27) at 2. The Serdas were provided this rejection form and a "menu" of available UM coverage options at the time they executed their policies.[1] (Doc. 28) at ¶ 26; (Doc. 34) at 5.

---

1.      The parties dispute whether the rejection forms were signed. *Compare* (Doc. 32) at 2 *with* (Doc. 34) at 4. Whether the forms were signed, however, is immaterial to the Court's analysis. *See Marckstadt v. Lockheed Martin, Corp.*, 2010-NMSC-001, at ¶ 24, 147 N.M. 678 (holding that "a signature is not required" for a written rejection of UM coverage to be valid).

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-movant to set forth specific facts showing a genuine issue for trial. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

A fact is "material" if it could have an effect on the outcome of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quoting *Tabor*, 703 F.3d at 1215). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When, as here, the parties file cross motions for summary judgment, a court is "entitled to assume that no evidence needs to be considered other than that filed by the parties[.]" *Atlantic Richfield, Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. Discussion

New Mexico's UM statute, NMSA 1978, § 66-5-301, "requires an insurer to offer UM[] coverage in an amount equal to the liability limits of the policy." *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 15, 149 N.M. 157. If an insured purchases UM coverage for an amount lower than the liability limits of their policy, that functions as an implicit "rejection" of full UM coverage. *Id.* Upon either an implicit or explicit rejection, the insurer must provide, *inter alia*, a written statement to inform the insured of their "knowing and

intelligent decision to receive or reject the full amount of [UM] coverage[.]" *Jordan v. Allstate*, 2010-NMSC-051, ¶ 2, 149 N.M. 162.

The New Mexico Supreme Court set forth "the form and manner that offers and rejections of UM[] coverage must take." *Casados v. Safeco Ins. Co. of Am.*, 2014 WL 11511720, at *8 (D.N.M.) (quoting *Jordan*, 2010-NMSC-051, at ¶ 14). The Court explained that it was addressing the question of UM coverage "to provide guidance on [an insurer's] technical requirements…." *Jaramillo v. Gov't Employees Ins. Co.*, 573 Fed. Appx. 733, 743 (10th Cir. 2014) (quoting *Jordan*, 2010-NMSC-051, at ¶ 13). These requirements mandate that an insurer: (1) "inform the insured that he or she is entitled to purchase UM[] coverage in an amount equal to the policy's liability limits;" (2) inform the insured "that he or she has a right to reject UM[] coverage altogether;" (3) ensure the rejection is memorialized in writing and "endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance;" and (4) "provide the corresponding premium charge" for the minimum, maximum, and "any other levels" of UM coverage offered (*e.g.*, provide a "menu" of available coverage options). *Jordan*, 2010-NMSC-051, at ¶ 17, 21 (citing N.M.S.A. 1978 § 66-5-301) (*Jordan* factors). The *Jordan* factors seek to provide "transparency" and arm the insured with "sufficient information to allow them to make an informed choice about their desired level of coverage." *Jaramillo*, 2011 WL 13085936, at *6.

It is undisputed that because the Serdas opted for an amount of UM coverage that was lower than their liability limits, they needed to execute a valid rejection. The parties agree that the central question before the Court is, thus, whether the Serdas' insurance policies satisfied *Jordan*'s strict requirements for rejecting UM coverage. (Doc. 32) at 5. The Court will analyze each of the *Jordan* factors in turn.

4

A. *State Farm's Compliance with Jordan Factors (1), (2), and (3)*

In its Cross-Motion, the Estate submits the Serdas' insurance "Declarations Page"—an invoice itemizing their coverage and premium payments—which includes a message regarding the UM coverage rejection. (Doc. 28) at 23. In pertinent part, the Declaration states:

> **IMPORTANT MESSAGES**
>
> **YOU HAVE REJECTED THE OFFER OF UNINSURED AND UNKNOWN MOTORISTS COVERAGE WITH LIMITS EQUAL TO YOUR LIABILITY COVERAGE LIMITS FOR BODILY INJURY AND PROPERTY DAMAGE, AND YOU HAVE SELECTED THE LOWER LIMITS SHOWN ABOVE UNDER COVERAGE & LIMITS. YOUR DECISION IS REFLECTED IN YOUR NEW MEXICO UNINSURED AND UNKNOWN MOTROSITS COVERAGE ACKNOWLEDGEMENT OF COVERAGE REJECTION THAT FOLLOWS AS A PART OF THIS DECLARATIONS PAGE. THE ACKNOWLEDGEMENT OF COVERAGE REJECTION INCLUDES ALL THE UNINSURED AND UNKNOWN MOTORISTS COVERAGE LIMITS AND ASSOCIATED PREMIUMS AVAILABLE AT THE TIME OF THE ISSUANCE OF THIS DECLARATIONS PAGE.**

*Id.* (emphasis and capitalization in original). The Estate attaches a subsequent form entitled "New Mexico Uninsured and Unknown Motorists Coverage (Acknowledgement of Coverage Rejection)," for each of the Serdas' five policies. *Id.* at 12-24. On this form, it states:

> I acknowledge and agree that I have been offered Uninsured and Unknown motorists Coverage with limits equal to my Liability Coverage limits for bodily injury and property damage and, having reviewed all available limits and premiums as shown on the following page, I: reject the offer of Uninsured and Unknown Motorists Coverage with limits equal to my Liability Coverage limits for bodily injury and property damage and select lower limits….

*Id.* at 18. The form further dictates: "I understand and agree that this acknowledgement of coverage rejection shall be applicable to this policy and any renewal policy or supplement thereto unless I make a written request for a change in this coverage to the company." *Id.* The form also provides the Serdas the option to "reject Uninsured and Unknown Motorists Coverage in its entirety." *Id.*

5

These rejection forms "inform the insured that he or she is entitled to purchase UM [] coverage in an amount equal to the policy's liability limit," and "that he or she has a right to reject UM[] coverage altogether." *See Jordan*, 2010-NMSC-051, at ¶ 21. The forms, thus, "enable the insured to make an informed decision about the level of UM[] coverage he or she wants to purchase…." *Id.* The Estate further admits that these forms "are part of a certified as true and complete policy of insurance between the [Serdas] and State Farm," indicating that the forms were meaningfully incorporated and endorsed as part of the Serdas' insurance policies. *See* (Doc. 34) at 5. The written rejection forms "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived," and thus, evidence an "objective manifestation of the [Serdas'] decision to reject [full UM coverage]," which was validly incorporated into their policy. *See Jordan*, 2010-NMSC-051, at ¶ 18. As a result, State Farm's rejection forms comply with the first three technical requirements mandated by *Jordan*.

Nevertheless, the Estate contends that the rejection forms were "confusing" because they offered coverage options higher than the Serdas were entitled to purchase and they failed to explain coverage options for "stacking" their insurance policies. *See* (Doc. 28) at 4-6. *Jordan* and its progeny make clear, however, that "[l]isting higher UM[] coverage amounts than an insured may select for a given bodily injury liability level does not create a fatal ambiguity[.]" *Jaramillo v. Gov't Employees Ins. Co.*, 2011 WL 13085936, at *6 (D.N.M.). Specifically, in *Jordan*, the insurer offered "coverage options ranging from the statutory minimum up to $2 million, along with a statement informing the insureds that they could 'only purchase [UM] insurance up to the Bodily Injury Liability limits'" of $100,000 per person. 2010-NMSC-051, at ¶ 5, 31 (internal punctuation omitted).

Despite the wide range of available coverage options listed, the *Jordan* Court concluded that the insurer meaningfully offered UM coverage equal to the insured's liability limits. *Id.* at ¶ 31-32; *see also Jaramillo*, 2011 WL 13085936, at *6 (explaining that "*Jordan* Court held that the [rejection] was insufficient not because it included quotations for UM[] coverage higher than liability limits, but because it did not provide the premium costs for each available coverage option"). Likewise, here, State Farm provided the Serdas with a range of coverage options that included a plan with UM coverage equal to their liability limits. Under *Jordan*, such a range of options is permissible, even if the insurer lists additional plans that the insured is not eligible to purchase. *See Jordan*, 2010-NMSC-051, at ¶ 31.

Next, every insurance policy is presupposed to "stack" coverage unless an "anti-stacking clause" precludes it. *Jaramillo*, 573 Fed. Appx. at 744-45. In addition, "*Jordan* does not mandate—either explicitly or implicitly—that a rejection of UM[] coverage equal to a policy's liability limits is invalid without a 'discussion' or 'explanation' of stacking principles." *Id.* at 747. Thus, the Estate's claim that the menu was "confusing" for its failure to discuss stacking is without merit. Indeed, because stacking is the default, an insurer need only explain stacking when it seeks to preclude its application. Indisputably, here, the policies are subject to the default stacking policy and thus, no further explanation was needed. *See* (Doc. 32) at 3 (explaining that "[t]here is no stacking dispute in this case" because challenged "policies are stackable").

In sum, the Estate reads *Jordan* to require finite detail and a level of precision plainly not required under New Mexico law. *Jordan*'s first three requirements mandate that State Farm offer a UM coverage plan equal to the Serdas' liability limits, afford the Serdas the opportunity to reject UM coverage in full, and memorialize their written rejection by incorporating it into the

7

insurance policies.  These three requirements were met, and thus, State Farm satisfied the first three *Jordan* factors as a matter of law.

      B.  *State Farm's Compliance with Jordan Factor (4)*

Lastly, the Court must determine whether State Farm "inform[ed] the insured about premium costs corresponding to the available levels of coverage[.]"  *See Jordan*, 2010-NMSC-051, at ¶ 22.  In requiring the insurer to offer their insured "UM[] coverage in a meaningful way," the insurer must guarantee that the insured's decision is "knowing and intelligent."  *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 14, 320 P.3d 482.  To facilitate the insured's "informed decision about the level of UM[] coverage he or she wants to purchase," the insurer must "provid[e] the insured with a menu of coverage options and corresponding premium costs."  *Curry*, 2014-NMCA-031, at ¶ 14 (citing *Jordan*, 2010-NMSC-051, at ¶ 21).  This requirement places the burden on the insurer to "fully inform their insureds regarding UM[] coverage options and corresponding premium costs."  *Sinclair v. Zurich Am. Ins. Co.*, 141 F. Supp. 3d 1162, 1168 (D.N.M. 2015) (explaining that "*Curry* reaffirmed *Jordan*'s requirement that insurers must offer UM[] coverage in a meaningful way").

Indeed, under New Mexico law, insureds "cannot make an informed decision about UM[] coverage 'without first receiving information from the insurance company.'"  *Id.* (quoting *Weed Warrior Servs.*, 2010-NMSC-050, at ¶ 13).  As a result, "cases recognize that the burden is on the insurer to provide the premium costs for all levels of UM[] coverage offered to the insured."  *Id.*  (internal citations omitted).  This requirement, as with the other requirements set forth in *Jordan*, is "stringent" and strictly construed against the insurer.  *See Soseeah v. Sentry Ins.*, 2014 WL 11430945, at *2 (D.N.M.); *accord Jaramillo*, 573 Fed. Appx. at 743 (explaining that UM

coverage policies offering lower coverage than maximum possible "must be construed strictly to protect the insured").

The parties both attach the relevant insurance policies and the corresponding menus listing the available premiums. State Farm provides several additional insurance policies, some expired and others pertaining to vehicles not at issue. *See, e.g.*, (Doc. 24-3) at 1-2 (insurance policy for 2010 Toyota Prius); (Doc. 24-2) at 1-2 (2011 insurance policy for Isuzu Axiom). Nevertheless, the parties agree that the pertinent policies before the Court are: policy numbers 31-3320-204G (2012 Honda Civic); 31-3320-2P (1989 Toyota Camry); 31-3320-204Z (2014 Toyota Corolla; 31-3320-2A (2015 Toyota Prius); and 31-3320-204G (2004 Isuzu Axiom). (Doc. 28) at 2.

Two of the five policies provide invoices with matching menus of UM coverage: the policies for the 2012 Honda Civic and the 2014 Toyota Corolla. (Doc. 24-4) at 1-4; (Doc. 24-5) at 1-4; (Doc. 25) at 20-25. The remaining three policies, however, provide coverage options that do not correspond to the rates on the Serdas' invoices. For example, the invoice for the 1989 Toyota Camry states that the Serdas selected a UM coverage plan with a corresponding semiannual premium rate of $60.12. *See* (Doc. 24-1) at 4. On the following page, the Serdas' plan for UM coverage is again listed with a semiannual premium of $60.12. *Id.* at 6. Yet, the corresponding menu listing nearly 300 UM coverage options does not include a policy choice with a $60.12 premium. *Id.* at 7.

The question before the Court is, thus: what if the insurer provides a menu of rates, as required under *Jordan*, but that menu lists incorrect premium quotes with the corresponding available plans of UM coverage? This question plagues three of State Farm's five policies. The Court looks to New Mexico state law for the answer. *See Coll v. First Am. Title Ins. Co.*, 642

9

F.3d 876, 886 (10th Cir. 2011) (explaining that federal court's task in applying state law is to follow or predict what state's highest court would do).

*Jordan* plainly requires that an insurer "inform the insured about premium costs corresponding to the available levels of [UM] coverage…." *Jordan*, 2010-NMSC-051, at ¶ 22; *accord Jaramillo*, 573 Fed. Appx. at 748 (explaining that "*Jordan* does, of course, require that insurers provide the *premium costs* when offering UM[] coverage") (emphasis in original).  In fashioning this mandate, the New Mexico Supreme Court reasoned that "by including premium prices for each available UM[] coverage level, insurance carriers meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM[] coverage." *Jordan*, 2010-NMSC-051, at ¶ 24.  The Supreme Court further explained, "[r]equiring insurers to provide a list of coverage options with corresponding costs actually enhances freedom of contract because insureds' expectations will be met and they will get exactly what they consciously choose to pay for." *Id.*

Here, the premium costs corresponding to the available UM coverage plans are inaccurate.  As a result, State Farm has not complied with *Jordan*'s mandate to include "premium costs *corresponding to* the available levels of [UM] coverage."  *See Jordan*, 2010-NMSC-051, at ¶ 22 (emphasis added).  A contrary holding belies *Jordan*'s intent "to prescribe workable requirements for a valid and meaningful rejection" of UM coverage, and contradicts *Jordan*'s purpose of ensuring that the insured's "expectations [are] met." *See id.* at ¶¶ 20, 24.  Indeed, providing the insured with inaccurate listings neither promotes "transparency in pricing" nor supports the insured's ability to "make an informed choice about their desired level of coverage." *See Hawley v. Farm Bureau Prop. & Cas. Ins. Co.*, 2019 WL 4747996, at *4

(D.N.M.) (explaining policy supporting *Jordan*'s decision).  This Court is strained to accept that *Jordan* permits such a practice.

State Farm proffers no explanation as to why the premiums reflected in their menus do not match the prices listed on the Serdas' invoices.  Instead, State Farm asserts "the documents speak for themselves."  (Doc. 32) at 1.  State Farm further claims "[i]t is not clear why these premiums are confusing at all."  *Id.* at 5.  Nevertheless, even if State Farm did proffer an explanation as to the menus' inconsistencies, a *post hoc* explanation would not protect State Farm from liability.  *See Sinclair*, 141 F. Supp. 3d at 1168 (holding that insured "had no obligation … to get additional information about the cost of the premiums").  Plainly stated, it was State Farm's responsibility to inform the Serdas about the premium costs corresponding to the available levels of UM coverage at the time they selected their insurance plans.  *See Jordan*, 2010-NMSC-051, at ¶ 22.  In failing to do so, the Serdas were stripped of their ability to make a knowing and intelligent purchase of UM coverage as required under New Mexico law.  *See id.* at ¶ 24.

In closing, the requirements set forth in *Jordan* are not optional.  *Id.* at ¶ 35 (requiring "full compliance with the requirements of the law"); *accord Delgado v. Liberty Mut. Fire Ins. Co.*, 2016 WL 7448312, at *7 (D.N.M.) (explaining that "[i]f any other levels of UM coverage are offered, the premium cost for those levels *must* also be provided") (emphasis added); *Casados v. Safeco Ins. Co. of Am.*, 2014 WL 11511720, at *8 (D.N.M.) (holding that *Jordan* "determined the form and manner that offers and rejections of UM[] coverage *must* take") (emphasis added); *Whelan v. State Farm Mut. Auto. Ins. Co.*, 2014-NMSC-021, ¶¶ 24-25, 329 P.3d 646 (concluding that *Jordan* "requires" insurers to disclose "the premium charges corresponding to each available option" of UM coverage); *Valdez v. Metro. Prop. & Cas. Ins.*

*Co.*, 867 F. Supp. 2d 1143, 1179 (D.N.M. 2012) (explaining *Jordan*'s requirements "must" be met "for a written rejection of [UM] coverage to be valid"). Rather, the New Mexico Supreme Court requires that insurers disclose the premium prices for each listed UM coverage level. *Jordan*, 2010-NMSC-051, at ¶ 21. Likewise, this Court concludes that the rationale supporting *Jordan* further requires that the premium quotes listed be accurate. In providing inaccurate premium quotes, State Farm failed to provide a viable menu of UM insurance plans for three of the Serdas' five policies. As a result, State Farm has not satisfied this final element of *Jordan*.

When an insurer fails to "provide the premium costs for each available coverage option," the insured's rejection is "insufficient as a matter of law." *Id.* at ¶ 32. In New Mexico, the proper remedy when an insurer fails to comply with *Jordan*'s mandate is to "read[] UM coverage at the liability limits into the [p]olicy." *Id.* at ¶ 33. Therefore, as a matter of law, the Serdas' three invalid automobile polices provide UM coverage equal to their liability limits of $100,000 per person and $300,000 per incident.

IV.   *Conclusion*

In sum, the undisputed material facts of this case demonstrate that State Farm failed to obtain valid rejections of UM coverage on three of the Serdas' insurance policies: policy numbers 31-3320-2P (1989 Toyota Camry); 31-3320-2A (2015 Toyota Prius); and 31-3320-204G (2004 Isuzu Axiom). The Court concludes that no reasonable jury could find that these three policies satisfy the strict requirements of *Jordan*. Therefore, New Mexico law mandates that each of these policies are reformed to provide UM coverage equal to the Serdas' liability limits. The Court further concludes that the undisputed material facts of this case demonstrate that the Serdas' remaining two insurance policies—31-3320-204G (2012 Honda Civic) and 31-

3320-204Z (2014 Toyota Corolla)—include valid rejections of full UM coverage.  No reasonable jury could find that these two policies fail to satisfy New Mexico law.

Based on the foregoing, the undisputed material facts of this case require, as a matter of law, reformation of the three policies with invalid rejections, to provide UM coverage of $100,000 per person and $300,000 per incident.  As a result, the Serdas' total stacked coverage is $350,000 per person (three policies with liability limits of $100,000 and two policies with valid rejections of lower coverage for $25,000) and $1,000,000 per incident (three policies with liability limits of $300,000 and two policies with valid rejections of lower coverage for $50,000).

In the absence of a genuine dispute of material facts, the Court grants in part and denies in part State Farm's Motion for Summary Judgment (Doc. 24) and grants in part and denies in part the Estate's Cross-Motion for Summary Judgment (Doc. 28).  Consistent with this conclusion, the Court notes that the Estate's breach of contract claim (Count II) survives as to three of State Farm's five policies—the reformed policies delineated above.

IT IS, THEREFORE, ORDERED that:

1. State Farm's Motion for Summary Judgment (Doc. 24) is granted in part and denied in part in that summary judgment is entered in favor of State Farm and against the Estate on the Estate's declaratory judgment claim (Count I) and breach of contract claim (Count II) with respect to State Farm policies 31-3320-204G (2012 Honda Civic) and 31-3320-204Z (2014 Toyota Corolla);

2.  those claims are dismissed with prejudice;

3. the Estate's Cross-Motion for Summary Judgment (Doc. 28) is granted in part and denied in part in that summary judgment is entered in favor of the Estate and against State Farm on the Estate's declaratory judgment claim (Count I) with respect to State Farm policies 31-

3320-2P (1989 Toyota Camry); 31-3320-2A (2015 Toyota Prius); and 31-3320-204G (2004 Isuzu Axiom); and

    4. State Farm policies 31-3320-2P (1989 Toyota Camry); 31-3320-2A (2015 Toyota Prius); and 31-3320-204G (2004 Isuzu Axiom) are each adjudged reformed to provide UM coverage of $100,000 per person and $300,000 per incident.

    IT IS ORDERED.

_____
UNITED STATES DISTRICT JUDGE