IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL HART, as personal representative
of the Estate of Cody Serda,

    Plaintiff,

vs.                                                                                                No. CV 19-529 KG/JFR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's Rule 54(b) Motion for Partial Reconsideration of Memorandum Opinion and Order (Motion to Reconsider) (Doc. 47), requesting the Court reconsider its Memorandum Opinion and Order (Opinion) (Doc. 42). The Motion to Reconsider is fully and timely briefed. *See* (Doc. 48, Response, Doc. 49, Reply). The Court notes jurisdiction under 28 U.S.C. § 1332. After review of the parties' briefing, the Court's Opinion, and the relevant law, the Court grants in part and denies in part State Farm's Motion to Reconsider (Doc. 47) and modifies its prior Opinion to incorporate the changes reflected herein.

### I. *Procedural Posture*

This case involves five State Farm insurance policies and the rejection of underinsured and uninsured motorist (UM) coverage. (Doc. 42) at 1. On February 4, 2020, State Farm filed a Motion for Summary Judgment, requesting a declaratory judgment on Plaintiff Michael Hart's claims for relief. (Doc. 24). On March 3, 2020, Mr. Hart filed a cross-Motion for Summary Judgment, requesting a declaratory judgment in his favor on each of the claims presented in his

Complaint. (Doc. 28). In their cross-Motions, the parties stipulated to the material facts that governed the case. (Doc. 42) at 2. The Court considered both Motions together, issuing its Opinion granting in part and denying in part the Motions on November 25, 2020. (Doc. 42).

In pertinent part, the Court's Opinion assessed State Farm's UM insurance policies under the framework articulated by the New Mexico Supreme Court in *Jordan v. Allstate*, 2010-NMSC-051, ¶ 2, 149 N.M. 162. (Doc. 42) at 4. The Court concluded that two of State Farm's five UM policies satisfied each of the four requirements set forth in *Jordan v. Allstate*. *Id.* at 5-9. However, the Court found that the remaining three State Farm UM policies failed *Jordan*'s fourth requirement, concluding that State Farm did not inform the insured about the premium costs corresponding to the available levels of UM coverage.[1] *Id.* at 8-12.

Importantly, in reaching this decision, the Court explained that State Farm provided a menu of UM insurance rates as required under *Jordan*, but the menu listed premium quotes that did not correspond to the prices listed on the insured's invoices. *Id.* at 9. The Court opined that offering inaccurate information did not comply with *Jordan*'s mandate to provide premium costs and their "corresponding" levels of UM coverage. *Id.* at 10. In addition, the Court noted that State Farm proffered "no explanation as to why the premiums reflected in their menus do not match the prices listed on the [] invoices." *Id.* at 11. Therefore, in accordance with New Mexico law, the Court modified the three policies at issue to "read UM coverage at the liability limits into the policy." *Id.* at 12 (quoting *Jordan*, 2010-NMSC-051, ¶ 33).

---

1. The Court categorized this mandate as the fourth requirement under the *Jordan* test for ease of convenience in its review; namely, to chronologically consider the satisfaction of the first three elements and independently assess the final requirement in greater detail. However, many courts refer to this requirement as the second *Jordan* factor—mirroring the chronology utilized in *Jordan* for review of a plaintiff's claim. *See Jordan*, 2010-NMSC-051, at ¶ 22 (listing requirement to "(2) inform the insured about premium costs corresponding to the available levels of coverage").

2

On December 23, 2020, State Farm filed its present Motion to Reconsider, requesting the Court amend its Opinion to award it full relief under New Mexico law. (Doc. 47). In support, State Farm explains that the discrepancy between the menus of available coverage and the insured's policies are the result of prorated prices quoted on the invoices. *Id.* at 2. Thus, State Farm alleges "the charge paid by the insured[] for the desired level of UM[] coverage does correspond with the six-month premium rate listed on the [menu.]" *Id.* at 7.

*II.   Standard*

Federal Rule of Civil Procedure 54(b) governs the Court's review of interlocutory orders and a party's motion to reconsider. Specifically, a Rule 54(b) "interlocutory motion invok[es] the] district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991). In analyzing a Rule 54(b) motion to reconsider, the Court looks to Rule 59(e) for guidance. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering Rule 54(b) motion to reconsider, "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)").

Under Rule 59(e), relief is appropriate if there is new controlling law, new evidence not available previously, or a "need to correct clear error or prevent manifest injustice." *Id.* (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). However, a party should not rely on Rule 59(e) to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012. As a result, a party should not attempt to "reargue an issue or advance new arguments or supporting facts which were available at the time of the original motion." *Id.*

3

*III.    Discussion*

In its original briefing, State Farm exclaimed that the policies at issue "speak for themselves." *See* (Doc. 42) at 11. In addition, State Farm questioned "why [Mr. Hart found] these premiums [] confusing at all." *Id.* However, when the Court sorted through the records, it discovered that three of the policies quoted premium prices that were irreconcilable with the attached menus of available rates. *See id.* at 9. Noting this inconsistency, the Court concluded that the menu of available rates did not match the charged premiums as required under New Mexico law. *See id.* at 11-12. In its further examination of the policies, the Court discovered there was no language explaining the price discrepancy or any methodology provided to deduce why the prices on the menu differed from those listed on the insured's invoice. Simply stated, neither the policies nor State Farm's briefing explained the discrepancies that hindered satisfaction of the final *Jordan* requirement.

Presently, in its Motion to Reconsider, State Farm explains that the original policy invoices reflected premium charges that corresponded with the menus of available coverage. (Doc. 47) at 2. State Farm asserts that the renewal forms the Court analyzed, however, included prorated premium charges and, therefore, the amounts differed from those listed on the accompanying menus of available coverage. *Id.* In addition, State Farm contends that New Mexico law does not require the insured to execute a rejection of UM coverage each time the policy is renewed. *Id.* at 3. Thus, State Farm's present argument is two-fold: (1) the rates listed were correct, and (2) even if they were incorrect, an insurer is not required to include a menu of available premium rates with an insured's renewal policy. *Id.* at 1-4. The Court analyzes each of State Farm's arguments in turn.

4

State Farm's first contention that its rates were correct but merely prorated overlooks *Jordan*'s intent to increase "transparency" in pricing and provide the insured with "sufficient information" to make "informed choice[s]" about their insurance coverage. *See Jaramillo v. Gov. Employees Ins. Co.*, 2011 WL 13085936, at *6 (D.N.M.), aff'd by *Jaramillo*, 573 Fed. Appx. 733 (10th Cir. 2014). Indeed, despite the alleged mathematical correctness of State Farm's policies, *Jordan* places the burden on the insurer to meaningfully provide the premium rates corresponding to each policy. *See Sinclair v. Zurich Am. Ins. Co.*, 141 F.Supp. 3d 1162, 1168 (D.N.M. 2015) (explaining that "cases recognize that the burden is on the insurer to provide the premium costs for all levels of UM[] coverage offered to the insured"); *see also Jordan*, 2010-NMSC-051, at ¶ 20 (explaining "knowing and intelligent" waiver effectuates "public policy" of mandating that insurers offer "coverage in ways that are [] conducive to allowing the insured to make a realistically informed choice").

Here, the invoice rates and the menu of coverage options were inconsistent. *Compare* (Doc. 24-1) at 4 (renewal policy listing semiannual premium rate of $60.12) *with* (Doc. 24-1) at 7 (menu of available coverage options, not listing policy rate of $60.12). It was State Farm's burden to explain this discrepancy and, plainly, it did not. *See Jaramillo*, 573 Fed. Appx. at 743 (explaining that UM rejections "must be construed strictly to protect the insured"). As a result, the policy was not "conducive to allowing the insured to make a *realistically* informed choice," as required under *Jordan*. 2010-NMSC-051, at ¶ 20 (emphasis added).

This conclusion is supported by the plain language of *Jordan*. *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (explaining that federal court's task in applying state law is to follow or predict what state's highest court would do). Specifically, in *Jordan*, the New Mexico Supreme Court explained that an insurer may provide a list of coverage options that

5

included policies unavailable to the insured, but the insurer must include "a statement informing the insureds" about the discrepancy. *Jordan*, 2010-NMSC-051, at ¶¶ 5, 31. Thus, *Jordan* dictates that when policy options may result in the insured misunderstanding their available coverage, the insurer bears the burden of including qualifying language to mitigate the risk of potential confusion. *See Jaramillo*, 2011 WL 13085936, at *6 (interpreting application of *Jordan* to "keep[] with New Mexico courts' goals").

However, the Court need not rely only on *Jordan* to support its current conclusion. Rather, the general principles of New Mexico automobile insurance law dictate that when "policy documentation is unclear, the insured will not be able to make an informed decision [about] whether to purchase and stay with that policy (and that insurance company) or to opt for another." *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶ 21, 118 N.M. 127. Consequently, even though *Jordan* does not require an insured to execute a new rejection for each policy renewal, the forms must nonetheless comply with New Mexico's general mandate to arm the insured with the necessary information to make an informed decision. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678 (explaining purpose of § 66-5-301 is to require insurer to "meaningfully offer [UM] coverage" so insured can "knowingly and intelligently act to reject it").

Next, State Farm contends that its menus of available rates were approved by the New Mexico Department of Insurance and, thus, they comply with *Jordan*'s requirements. (Doc. 47-1) at 2. In support, State Farm invites the Court to conclude that because its menus were once in compliance, any subsequent use of those menus should be awarded a rubber-stamp of judicial approval. To the contrary, *Jordan* imposes a continuing obligation on the insurer to provide "clear and unambiguous" UM policies so that the insured may later, with the benefit of

6

hindsight, change their mind. *See Jordan*, 2010-NMSC-051, at ¶ 18 (explaining purpose to "*keep*[] the insured well-informed about the decision to reject coverage and allow[] the insured to reconsider his or her rejection after 'further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home'" (quoting *Romero v. Dairyland*, 1990-NMSC-111, ¶ 9, 111 N.M. 154)) (emphasis added); *Sanchez v. Essentia Ins. Co.*, 2020-NMCA-009, ¶ 10, 456 P.3d 1108 (explaining that "any individual rejecting [UM] coverage should *remain* well informed as to that decision" (quoting *Romero*, 1990-NMSC-111, ¶ at 9)) (emphasis added).

State Farm's position, therefore, ignores that *Jordan* requires the rejection of UM coverage to be incorporated into the insured's policy for the express purpose of allowing later reference and further reflection.[2] *Id.* Indeed, *Jordan*'s requirements were crafted to afford the insured the flexibility to later change their mind. *Id.* at ¶ 20 (finding rejection invalid when included in "buried language toward the end of a generic forty-nine-page policy"). Consequently, permitting an insurer to initially comply with *Jordan*'s requirements but then subsequently send conflicting renewal policies plainly contradicts *Jordan*'s intent to "keep[] the insured well informed" even after execution of the original policy. 2010-NMSC-051, at ¶ 18.

Similarly, State Farm explains that it is not required under New Mexico law to provide a menu of available coverage options when it sends the insured a renewal policy. However, it is undisputed that State Farm chose to do so anyway. (Doc. 47-1) at 8. The Court remains

---

2. Notably, "incorporation" of the UM rejection into the insured's policy is a separate requirement under *Jordan* from the mandate to provide the insured with the premium costs corresponding to their available UM coverage options. *Jordan*, 2020-NMSC-051, ¶ 22. Both requirements, however, are derived from the New Mexico Supreme Court's interpretation of Section 66-5-301 and the mandate that an insured have the ability to make a "realistically informed choice" regarding UM coverage. *Id.* at ¶ 20.

unpersuaded that an insurer can provide misleading and inconsistent information in the renewal policy and escape liability because *Jordan* does not dictate that such a practice is prohibited. Instead, the better practice is to *either* explain that the price discrepancy between the invoice and the menu is the result of a prorated figure *or* opt not to include an inconsistent menu with the renewal forms at all.

In arguing in support of its position, State Farm cites *Lureas v. Geico Gen. Ins. Co.*, 2018-NMCA-051, 424 P.2d 665, and *Vigil v. Rio Grande Ins. Co of Santa Fe*, 1997-NMCA-124, 124 N.M. 324. However, these cases examined the consequences of an insurer not including a rejection form with an insured's renewal policy. *Lureas*, 2018-NMCA-051, at ¶ 21; *Vigil*, 1997-NMCA-124, at ¶¶ 14-17. In that circumstance, the Court of Appeals of New Mexico held that *Jordan* does not require a renewal policy to include an executed rejection form. *See id.* Here, however, State Farm included a menu of available premium rates with its renewal policy, despite the clear mandate that such a practice is not required. Therefore, the question is not whether State Farm had to execute a new rejection form—a question clearly answered in the negative by both *Lureas* and *Vigil*—but, rather, the consequences of including such a form that confuses the insured.

The Court of Appeals of New Mexico's recent holding in *Sanchez* is instructive for resolving this question. 2020-NMCA-009. In *Sanchez*, the insurer waited seven months between receiving the insured's rejection of UM coverage and incorporating it into their insurance policy. *Id.* at ¶ 1. In concluding that this practice ran afoul of New Mexico insurance law, the *Sanchez* Court opined that "memory fades with the passage of time" and, thus, "the longer the delay, the more likely it is that the insured will no longer be able to recall information—such as coverage options and their respective costs—pertinent to the decision to

8

reject, and the more likely it is that the incorporation, rather than enabling reconsideration, will do nothing more than remind the insured of a decision that has already ossified." *Id.* at ¶ 12. Likewise, here, providing conflicting information after the insured's initial rejection of UM coverage "deprives the insured [the] opportunity" to "fully reconsider any rejection of [] UM coverage." *See id.* As a result, *Jordan*'s mandate in *Sanchez*, like here, was not afforded the opportunity to "do what it is designed to do: provide the insured with a fair 'opportunity ... to fully reconsider any rejection of UM[] coverage." *See id.*

The Court's conclusion is also supported by the plain language of New Mexico's UM statute. *See* N.M.S.A. 1978, § 66-5-301 (1983). Indeed, Section 66-5-301 "embodies a strong public policy to expand insurance coverage." *Sanchez*, 2020-NMCA-009, at ¶ 7. Consequently, courts "interpret the UM[] statute liberally to implement its remedial purpose." *Romero v. Bd. Of Cnty. Com'rs of Cnty. of Taos*, 2011-NMCA-066, 150 N.M. 59, ¶ 8; *see also Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 9, 147 N.M. 14 (opining that courts "liberally interpret the UM statute to implement the remedial purpose of protecting the insured"). As a result, "the provision of the maximum possible amount of UM[] coverage in every insurance policy is the default rule" and "any exception to that rule must be construed strictly to protect the insured." *Curry v. Great Northwest Ins. Co.*, 2014-NMCA-031, at ¶ 24, 320 P.3d 482.

Lastly, the Court notes that the present procedural posture directs the case in favor of denying State Farm's request for relief. Most notably, State Farm had three prior opportunities to explain the discrepancy in its policies. *See* (Motion for Summary Judgment, Doc. 24, Response to Mr. Hart's Cross-Motion for Summary Judgment, Doc. 32, and Reply in support of Motion for Summary Judgment, Doc. 33). In addition, State Farm knew that satisfaction of the *Jordan* factors was the central issue before the Court. *See* (Doc. 42) at 4 (opining that "parties

9

agree that the central question before the Court is ... whether the Serdas' insurance policies satisfied *Jordan*'s strict requirements for rejecting UM coverage").

However, only after the Court granted partial relief in Mr. Hart's favor did State Farm proffer an affidavit describing the prorated formula and explaining the discrepancy. *See* (Doc. 47-1). The Court makes this observation to illustrate that if it takes four legal briefs and an affidavit from an insurance underwriter to thoroughly explain the discrepancy, the policies are likely inconsistent with *Jordan*'s mandate of accessibility to the average consumer. *See Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 13, 245 P.3d 1209 (internal citation omitted) (explaining that "courts of New Mexico assume the average purchaser of automobile insurance 'will have limited knowledge of insurance law'"); *Williams*, 2009-NMCA-069, at ¶ 14 (opining that "not many people who purchases automobile insurance comprehend esoteric legal and insurance concepts" (internal citation and quotations omitted)); *Arias*, 2009-NMCA-100, ¶ 16 (referring to regulations in insurance policy as "obscure statutory reference that few insureds, if any, would know about").

The Court finds the principles asserted in *Williams v. Farmers Ins. Co.* particularly poignant to the present circumstances. 2009-NMCA-069, 146 N.M. 515. Specifically, in *Williams*, the Court of Appeals of New Mexico held that an insurer failed to satisfy *Jordan* when the language in a policy "conveyed conflicting information." *Id.* at ¶ 20. The Court explained that "[w]hile [d]efendant's explanation ... appears to make sense, it nevertheless fails to eliminate the resulting ambiguity from the contract." *Id.* at ¶ 14. Thus, the *Williams* Court concluded, "[a]lthough [d]efendant can explain the reasons for these conflicting provisions, the reasons are not clear from the policy, and these endorsements create an ambiguity." *Id.* Similarly, here, as the Court initially explained, "a *post hoc* explanation [does] not protect State

Farm from liability." (Doc. 42) at 11 (citing *Sinclair*, 141 F.Supp. 3d at 1168 (holding that insured "had no obligation … to get additional information about the cost of the premiums")).

In sum, the Court is unpersuaded by State Farm's new arguments supporting relief in its favor. While State Farm's policy documents may have originally complied with *Jordan*'s mandate, its subsequent communications to the insured departed from the conciseness required to maintain a valid rejection. Stated plainly, State Farm included menus of available premium rates that did not match the attached renewal policies, placing the burden on the insured to make sense of the numbers. This practice deprived the insured of the ability to meaningfully reconsider their coverage options because, in attempting to do so, they would have been unable to decipher how the menu matched their invoice. Significantly, the renewal policies with the inconsistent menus were the policies in place at the time of loss—the central documents that the decedent's family needed to meaningfully understand to thoughtfully consider their options. *See* N.M.S.A. 1978, § 66-5-31 (explaining UM coverage requirements "applicable at the time of the accident").

It remains State Farm's burden, as the party having the benefit of information and elevated contractual advantage, to set forth the terms of the parties' agreement in understandable language that a lay person can understand. *See Weed Warrior Serv.*, 2010-NMSC-050, ¶ 13 (directing that courts "not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM[] coverage desired or required without first receiving information from the insurance company"). It is not the insured's job, or subsequently, this Court's, to decipher what formula results in the UM coverage rate that the insured opted to receive. Moreover, while providing policy documents that conform with *Jordan*'s mandate at

the outset is necessary, the insurer cannot subsequently confuse the insured with inconsistent renewal policies and then escape liability. Such a conclusion plainly speaks for itself.

*IV.  Conclusion*

The outcome of the Court's prior Opinion remains unchanged. However, the Court amends the Opinion to include the foregoing rationale for rejecting State Farm's newly proffered contentions. For this reason, State Farm's Motion to Reconsider (Doc. 47) is granted in part and denied in part.

IT IS ORDERED.

UNITED STATES DISTRICT JUDGE